IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EDWIN CUEBAS-RIVERA, et al.,

Plaintiffs,

v.

PEDRO TOLEDO DAVILA, et al.,

Defendants.

CIVIL NO. 07-1835 (CVR)

## OPINION AND ORDER

## INTRODUCTION

Plaintiffs Edwin Cuebas-Rivera, the Estate of Edwin Cuebas-Rivera, Ana María Rivera-Maldonado and Devens Cuevas-Rivera[1] filed this civil action for money damages, on their own and as the heirs of the cause of action, under Title 42, United States Code, Section 1983 and the Fourteenth Amendment of the United States Constitution, as well as supplemental jurisdiction under the laws of the Commonwealth of Puerto Rico, in particular Article 1802, 31 L.P.R.A. Sec. 5141.  Plaintiffs' claims originate from the demise of their relative Edwin Cuebas-Rivera (hereafter "Cuebas-Rivera") who committed suicide on November 12, 2006, while being held at the Salinas Police Station.  (Amended Complaint, Docket No. 15).

On April 1, 2009, the Court dismissed plaintiffs' claims against co-defendants Pedro Toledo-Dávila and Alejandro Figueroa-Figueroa. The remaining defendants in this action,

---

[1]  Plaintiff Ana María Rivera-Maldonado is the mother of decedent Edwin Cuebas-Rivera, whose Estate is represented by the legal heirs constituted by Ana María Rivera-Maldonado, for having no descendants.  Co-plaintiff Devens Cuebas-Rivera, a minor, is represented by Rivera-Maldonado, the mother with *patria potestas*.

Edwin Rivera-Cuebas et al. vs. Pedro Toledo Dávila, et al
Civil No. 07-1835 (CVR)
Opinion and Order
Page No. 2

Víctor M. Santiago-Torres and José M. Burgos-Munera, (hereafter "defendants Santiago-Torres and Burgos-Munera", respectively)[2] filed a Motion for Summary Judgment with the corresponding memorandum of law and statements of uncontested material facts. (Docket Nos. 67 and 68).   The certified translation of exhibits were duly filed.  (Id. No. 78).  The remaining co-defendants, Santiago-Torres and Burgos-Munera, in their personal capacities, seek summary disposition stating plaintiffs have failed to state a cause of action for a Section 1983 violation or under the Fourteenth Amendment of the United States Constitution since there is an absence of deliberate indifference by prison officials which resulted in an inmate's death, more so since suicide has traditionally been considered an intervening force that breaks all causal links and nexus with co-defendants' alleged actions as the proximate cause of plaintiffs' federal claim.  As to the supplemental claims, these co-defendants state that, in the absence of federal jurisdiction, the Court should not exercise pendent jurisdiction over state law claims.  Furthermore,  the co-defendants request entitlement to qualified immunity since personal liability should not ensue when the officers' conduct did not violate a constitutional right and a reasonable officer in their position could have believed their conduct was lawful in light of clearly established law. This contention is further developed in that the co-defendants' intervention with the deceased Rivera-Cuebas would not have led a reasonable officer to believe there was a possibility of suicide because the detainee was cooperative, non-violent, looking forward

---

[2] Co-defendant Burgos-Munera was a policeman assigned to the Salinas Police Headquarters and was in charge of the detainees on the night of November 12, 2006.  Co-defendant Santiago-Torres was initially an unknown defendant who participated in the detention of plaintiffs and/or were in charge of assuring security of detainees at the cell blocks of Salinas Police Station. *Amended Complaint ¶¶ 8-9.*

Edwin Rivera-Cuebas et al. vs. Pedro Toledo Dávila, et al
Civil No. 07-1835 (CVR)
Opinion and Order
Page No. 3

to seeing his friends afterwards, the officers acted diligently in removing shoes, shoelaces, belt, watch, and crucifix before placing the detainee in the holding cell, and he was observed on numerous occasions by the officers without any showing to contradict a calm and composed individual who displayed no manifestation of suicidal potential. Thus, co-defendants Santiago-Torres and Burgos-Munera aver there is no controversy of genuine issues of material facts for which they are entitled to summary judgment as requested.

Plaintiffs filed the corresponding opposition and their statement of uncontested facts and requested an extension of time to file the translations. (Docket Nos. 80, 81 and 82). Plaintiffs in their opposition raise the existence of genuine issues of material facts in controversy that would require submission to a reasonable jury since the officers held prior information the detainee had a mental condition, at the time of being detained the officers were aware that the detainee had presented a violent conduct, and the detainee displayed at the holding cell anxiety and even telephoned from the holding cell his mother, in the presence of police officers in charge, displaying words showing a suicidal risk. Plaintiffs submit the evidence raises conflicting testimonies which should overcome the request for summary disposition requested by defendants. In addition, the police officers at the Salinas Police Station were aware that the detainee Rivera-Cuebas had a mental problem and had a prior suicidal attempt. Still, they let Rivera-Cuebas unsupervised at the holding cell of the Salinas Police Station. Since there are conflicting testimonies, plaintiffs claim there are disputed issues of material facts in controversy which preclude summary disposition.

Edwin Rivera-Cuebas et al. vs. Pedro Toledo Dávila, et al
Civil No. 07-1835 (CVR)
Opinion and Order
Page No. 4

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id.

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact,

Edwin Rivera-Cuebas et al. vs. Pedro Toledo Dávila, et al
Civil No. 07-1835 (CVR)
Opinion and Order
Page No. 5

"[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

## LEGAL DISCUSSION

### A.    Material Facts not in Controversy.

Cuebas-Rivera, the deceased, was arrested near the residence after her mother, plaintiff Rivera-Maldonado, called the police regarding threats with a knife.[3]  Officer Santiago-Torres arrested Cuebas-Rivera near a gazebo while speaking to some friends.  At the time he appeared calm.  He placed his hands behind his back and sat in the front seat of the patrol car.  They arrived at the Salinas Police Station around 6:00 pm of November 12, 2006. When placing Cuebas-Rivera at the cell, Officer Santiago-Torres took the handcuffs off and removed his shoes, shoelaces, belt, watch and crucifix.  Cuebas-Rivera was then placed inside the holding cell and form PPR 82 form was filled. Defendant Burgos-Munera arrived around 7:00 pm to take charge as the only desk officer and radio operator at the Salinas Police Station, which included the responsibility also over persons detained at the holding cells.  Cuebas-Rivera had been observed on top of the toilet at the holding cell. Decedent's uncle, Adalberto Rivera-Febus, visited Cuebas-Rivera at the Salinas Police Station around 7:00 pm in the evening of November 12, 2006. Monserrate Rivera-Romero, decedent's aunt, spoke with him over the phone while detained at the station shortly before

---

[3] Ms. Rivera-Maldonado had called the Salinas Police Station to inform the duty desk officers, Militza Márquez-Sánchez that her son Cuebas-Rivera was aggressive. Ms. Rivera-Maldonado told Officer Santiago-Torres upon arrival that her son had threatened to kill her with a knife.  After placing a call to a district attorney with the facts, Cuebas-Rivera was placed under arrest and was taken to the holding cell.

he committed suicide.  Cuebas-Rivera subsequently hanged himself from the bars that covered the small window at the back of the holding cell by using his sweater.  He died approximately at 9:00 pm that night.

## B.  Material Facts in Controversy.

Defendants submit that upon arriving at the Salinas Police Station Cuebas-Rivera was calm.  The duty desk officer Militza Márquez-Sánchez did not notice any behavior that would create suspicion that Cuebas-Rivera would attack her.  When co-defendant Burgos-Munera arrived at 7:00 pm to take the position of desk officer, he had to attend various tasks, including periodic checks of detainees inside the holding cells.  Cuebas-Rivera was already inside the cell and other police officers from the previous shifts informed him that Cuebas-Rivera had threatened to kill his mother with a knife but was not informed of any mental problems.  *Deft's Uncontested Statement, Exhibit 21.*

Co-defendant Burgos-Munera made periodic checks of the detainee, a first time when he started the shift at 7:00 pm and found he was calm.  The second time, some thirty (30) to forty five (45) minutes after the first time, the detainee was thirsty and Burgos-Munera brought him water and Cuebas-Rivera thanked him.  *Id., Exhibits 22, 23.*  Co-defendant Burgos-Munera saw the detainee a third time in which the detainee asked him what would happen to him (the detainee) and was told that the arresting agent Santiago-Torres would take care of the matter the following morning.  This third encounter took place some fifteen (15) to thirty (30) minutes from the second one.  Burgos-Munera noticed Cuebas-Rivera was serene.  *Id., Exhibit 24.*   On a fourth time, Burgos-Munera noticed

Edwin Rivera-Cuebas et al. vs. Pedro Toledo Dávila, et al
Civil No. 07-1835 (CVR)
Opinion and Order
Page No. 7

Cuebas-Rivera was standing on top of the toilet of his holding cell. This transpired some half and hour after the third encounter. *Id., Exhibit 25.* Defendant Burgos-Munera did not see anything strange about Cuebas-Rivera being on top of the toilet since most of the detainees do the same thing to look out to the street or to speak with family members. *Id., Exhibit 26.*

On the fifth and last time, Burgos-Munera performed a periodic check and could only see the decedent's torso and when he looked inside found Cuebas-Rivera had hanged himself. *Deft's Uncontested, Exhibit 27.* This fifth time took place about half an hour after the fourth check of the detainee inside the cell. *Id., Exhibit 28.*

Defendants submit that neither the decedent's mother nor his uncle or aunt suspected he would commit suicide nor had expressed he was to commit suicide. *Deft's Uncontested, Exhibits 32, 33, 34, 35.*

Plaintiffs' opposition succinctly provides having testimonies and evidence the police officers, when called to her house because of the disturbance by Cuebas-Rivera threats to his mother with a knife, where provided information that he had mental problems and was emotionally disturbed. Police Officer Santiago-Torres, who came to the house, was also aware, for having attended to a previous call around June of same year, that Cuebas-Rivera had previously attempted to commit suicide by taking an excess of pills.[4] As to the second call of November 12, 2006, Police Officer Santiago-Torres responded and knew that

---

[4] On that previous occasion of June 20, 2006, co-defendant Police Officer Santiago-Torres was called because Cuebas-Rivera had attempted suicide by intoxication with medication. *Plaintiff's Uncontested, Exhibit 6.* He was taken to the hospital and stayed overnight. The next day, Cuebas-Rivera refused treatment and left the hospital on his own by stealing a car to get back home but was arrested and incarcerated for four (4) months. *Id., Exhibit 1.*

Cuebas-Rivera was the same person who had been called before who attempted suicide by taking pills and that he had stolen a car to get back home.  Ms. Rivera-Maldonado, in front of another police officer, indicated she had been threatened and Cuebas-Rivera stated he was going to burn the house.  This information was also notified to police officer Santiago-Torres, although he denies having been told about the previous call, solely knowing that Cuebas-Rivera came out of jail.  *Plaintiffs' Uncontested, Exhibits 2, 8.*  Ms. Rivera-Maldonado, Mr. Devens Cuebas-Rivera, the sister of the deceased and minor daughter of Ms. Rivera-Maldonado, were present during these conversations and have provided deposition testimonies on these issues.  *Plaintiffs' opposition, Exhibits 1, 2.*

Furthermore, Police Officer Adalberto Rivera-Febus, the detainees' uncle, indicated to police officer and herein co-defendant Santiago-Torres that his nephew Cuebas-Rivera suffered from mental disorder before he committed suicide.  *Id., Exhibit 3.*

When the deceased uncle, police officer Rivera-Febus, was present at the Salinas Police Station after Cuebas-Rivera had been detained, another guard told him his nephew was somewhat anxious. *Plaintiffs' opposition, Exhibit 3.*  While outside of the Salinas Police Station with Police Officer Santiago-Torres, before Police Officer Rivera-Febus, another police officer came out and told him his nephew Cuebas-Rivera was hanging from the cell bars with something in his hand that resulted to be a handkerchief.  Rivera-Febus took away the handkerchief from Cuebas-Rivera.  Rivera-Febus told a female police officer, who was at the previous shift, that Cuebas-Rivera was suffering from a mental condition and although Militza Márquez-Sánchez was on duty and is the female officer present at the time,

Edwin Rivera-Cuebas et al. vs. Pedro Toledo Dávila, et al
Civil No. 07-1835 (CVR)
Opinion and Order
Page No. 9

she does not recall any conversation on this matter nor telephone calls being received as to

the detainee Cuebas-Rivera by the mother or aunt. *Id.*

Although co-defendants are claiming having removed from Cuebas-Rivera all

personal effects, the deceased was in possession of a handkerchief and personal keys while

at the holding cell. *Plaintiffs' Uncontested, Exhibits 3, 10.* Co-defendant Burgos-Mudera

had no visibility from the front desk of the Salinas Police Station to inside the holding cell

and followed no specific procedure to keep and eye on persons therein detained. *Id. Exhibit*

*9.* At least two (2) of the four (4) times claimed by Burgos-Mudera of having seen Cuebas-

Rivera at the holding cell was because the detainee had called upon him. *Id.* Santiago-

Torres is aware that, when a person is mentally disturbed and is threatening his family, he

is to orient the family to obtain an order from the court for involuntary hospitalization,

unless there is no one with the individual and the officers are to call the district attorney to

get the order. *Plaintiffs' Uncontested, Exhibit 8.*

After a perusal of the parties submission in this case and taking into account the

above material issues of fact, we find here are material facts in controversy that entail the

potential to affect the outcome of the suit. <u>Sánchez v. Alvarado</u>, 101 F.3d 223, 227 (1st Cir.

1996); <u>Montfort Rodríguez v. Rey Hernández</u>, 504 F.3d 221 (1st Cir. 2007). There being

contested material facts present, summary disposition is unwarranted.

## C. Qualified Immunity.

Defendants Santiago-Torres and Burgos-Munera claim they are entitled to qualified

immunity submitting no reasonable officer in their position would have considered they

had violated the constitutional rights of the decedent Cuebas-Rivera.

Thus, the court needs to determine (1) whether the constitutional right allegedly involved is a clearly established one; and (2) whether a reasonable official in the same circumstances would have understood that his or her conduct violated that right. Fletcher v. Town of Clinton, 196 F.3d 41, 48 (1st Cir. 1999). In other words, once it is determined that the alleged conduct violates a clearly established constitutional right, the court must still determine whether an objectively reasonable official with the information that he or she possessed at the time would have believed that his/her conduct was lawful. *See* McBride v. Taylor, 924 F.2d 386, 389 (1st Cir. 1991).

The qualified immunity defense recognizes an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

Qualified immunity protects public officers from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). The relevant question is the objective questions (albeit fact-specific) whether a reasonable officer could have believed the omissions at issue have been lawful in light of clearly established law and information they then possessed. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987); Cortés-Quiñones v. Jiménez-Nettleship,

Edwin Rivera-Cuebas et al. vs. Pedro Toledo Dávila, et al
Civil No. 07-1835 (CVR)
Opinion and Order
Page No. 11

842 F.2d 556 (1st Cir. 1988). At this time and age, it has already been clearly established that jail officials violate the due process right of detainees if they exhibit deliberate indifference to their medical needs. Elliott v. Cheshire County, N.H., 940 F.2d 7 (1st Cir. 1991).

In Bell v. Wolfish, 441 U.S. 520 (1979), the Supreme Court held that pretrial detainees are entitled to at least the same constitutional rights enjoyed by convicted prisoners. *See* Estelle v. Gamble, 429 U.S. 97 (1976) (deliberate indifference standard delineated).

Mentally ill detainees, as juvenile delinquents, who have not been convicted of crimes, have a due process interest in freedom from unnecessary bodily restraint which entitles them to closer scrutiny of their conditions of confinement than that accorded to convicted criminals. Santana v. Collazo, 714 F.2d 1172, 1180 (1st Cir. 1983). In a suicide case, deliberate indifference requires a strong likelihood, rather than a mere possibility, that self-infliction of harm will occur. Torraco v. Maloney, 923 F.2d 231, 236 (1st Cir. 1991).

The conduct must encompass acts or omissions so dangerous (in respect to health and safety) that a defendant's knowledge of a large risk can be inferred. *See* Cortés-Quiñones, 842 F.2d at 558. When an official is placed on actual notice of a prisoner's need for physical protection or medical care, administrative negligence can rise to the level of deliberate indifference to or reckless disregard for that prisoner's safety. Layne v. Vinzant, 657 F.2d 468, 471 (1st Cir. 1981) (requiring actual notice of the prisoner's need for protection).

Deliberate indifference means that a prison official subjectively must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  In the absence of previous threat of an earlier attempt at suicide, no federal court has concluded that an official conduct in failing to prevent suicide constitutes deliberate indifference.  Burrell v. Hampshire County, 307 F.3d 1,  8 (1st Cir. 2002).

In a prison suicide case, deliberate indifference is shown by (1) an unusually serious risk of harm (self-inflicted harm, in a suicide case); (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk; and (3) defendant's failure to take obvious steps to address that known, serious risk.  The risk, the knowledge and the failure to do the obvious, taken together, must show that the defendant is "deliberately indifferent" to the harm that follows.  Bowen v. City of Manchester, 966 F.2d 13 (1st Cir. 1992).

Plaintiffs in this case must show that a reasonable officer in the position of the defendants should have known that their actions, or willful failure to act, amounted to "deliberate indifference" to the serious risk that the Cuebas-Rivera could commit suicide.  Manarite v. Springfield, 957 F.2d 953, 956 (1st Cir. 1992). "While proof of deliberate indifference by prison officials does not require evidence that the officials were aware of the risk of a specific harm, the plaintiff must show that the officials had 'knowledge from which the official(s) can draw the inference that a substantial risk of serious harm exists.'" *See* Calderón Ortiz v. Laboy Alvarado, 300 F.3d 60, 65 (1st Cir. 2002).

Plaintiffs properly submit that in the context of jail suicides, an allegation of deliberate indifference must be in the light of the level of knowledge possessed by the

officials involved, or that which should have been known as to an inmate' suicidal tendencies. Popham v. City of Talladega, 908 F2d 1561 (11th Cir. 1990). Knowledge of prior suicidal attempts or tendencies is a material fact in the finding of a violation of plaintiffs' constitutional rights. Cabrales v. County of Los Angeles, 864 F.2d 1454 (9th Cir. 1988)(denying defendant's motion for judgment notwithstanding the verdict where jailers have rescued decedent from previous suicidal attempt); Partridge v. Two Unknown Police Officers, 791 F2d 1182 (5th Cir. 1986) (plaintiff stated a valid claim where it was known that detainee/decedent had attempted suicide in previous confinement).

In the instant case, there are issues of material facts in controversy, as above discussed, which together with the circumstantial evidence available to plaintiffs, bear on the issue of qualified immunity. There are genuine issues of material fact in controversy as to defendants' knowledge or not of previous suicide attempts of the deceased Cuebas-Rivera. The time span between the events at issue and of these attempts, June 2006 and November of 2006, serves as circumstantial evidence that favors plaintiffs, together with the fact the same police officers participated in the arrest and the expected consequent awareness of a mental condition. These events, coupled with the subsequent placement of the deceased in a holding cell from where no direct observation by the duty officer was even feasible, even after having previously observed the deceased on top of the toilet inside the cell, from whom a handkerchief had been removed but finally hanged himself with the sweater, defeat defendants' request for qualified immunity based on factual disputes.

Thus, entitlement by co-defendants Santiago-Torres and Burgos-Munera to qualified immunity is **DENIED**. If there is a controversy of material issues of facts, denial of

Edwin Rivera-Cuebas et al. vs. Pedro Toledo Dávila, et al
Civil No. 07-1835 (CVR)
Opinion and Order
Page No. 14

qualified immunity is proper.  Fernández v. Leonard, 784 F.2d 1209, 1214, n. 2 (1st Cir.

1986); De Abadía v. Izquierdo-Mora, 792 F.2d 1187 (1st Cir. 1986).[5]

## CONCLUSION

In view of the above discussed, the request for summary judgment and for qualified

immunity by co-defendants Víctor M. Santiago-Torres and José M. Burgos-Munera (Docket

No. 67) is **DENIED**.

In San Juan, Puerto Rico, this 14th day of January  of 2010.

s/**CAMILLE L. VELEZ-RIVE**
**CAMILLE L. VELEZ-RIVE**
**UNITED STATES MAGISTRATE JUDGE**

---

[5]  See Mihos v. Swift, 358 F.3d 91 (1st Cir. 2004) (denial of qualified immunity because of genuine issues of material fact, does not permit allow interlocutory appeal).  However, defendants may still raised the defense of qualified immunity at trial.  Guzmán-Rivera v. Rivera-Cruz, 98 F.3d 664, 669 (1st Cir. 1996).  Thus, the district court may reserve the issue of qualified immunity until after the return of a verdict. See Sueiro Vázquez v. Torregrosa de la Rosa, 494 F.3d 227 (1st Cir. 2007); see also  Sueiro Vázquez v. Torregrosa de la Rosa, 414 F.Supp.2d 124, 128-29  n. 4 (D. Puerto Rico 2006); .